[No. 2030.]

### C. D. Freeman *v.* The State.

1. FALSELY PERSONATING ANOTHER, ETC.— INDICTMENT for falsely personating another person, as that offense is defined by article 450 of the Penal Code, need not allege the whereabouts or the residence of the person falsely personated. An indictment conforming substantially to number 318 of Willson's Criminal Forms, page 144, sufficiently charges the offense of falsely personating another.

2. SAME — FACT CASE.— See the statement of the case for evidence *held* insufficient to support a conviction for falsely personating another.

APPEAL from the District Court of Tarrant. Tried below before the Hon. R. E. Beckham.

The conviction in this case was had upon an indictment which charged the appellant with the offense of falsely personating another, etc., as that offense is defined by article 450 of the Penal Code. The indictment and conviction of the appellant grew out of his transaction with Zeno C. Ross, in Tarrant county, Texas, on the 22d day of October, 1884, wherein he represented himself to be one certain Charles D. Freeman, the patentee, as the assignee of M. J. Webb, of a certain patent for six hundred and forty acres of land situated in Callahan county, Texas, and as the grantee in a certain warranty deed wherein one J. S. Callaway, of Callahan county, Texas, conveyed to Charles D. Freeman, of Philadelphia, Pennsylvania, two hundred and thirteen and one-third acres of land situated in Callahan county, Texas; upon which title papers the appellant, representing himself to be the Charles D. Freeman named in each, obtained two loans of money from the said Zeno C. Ross. A term of three years in the penitentiary was the punishment assessed against the appellant.

Zeno C. Ross was the first witness for the State. He testified that the defendant was introduced to him by Mr. Doyle in Fort Worth, Texas, on the 10th day of October, 1884. The defendant told the witness that his name was Charles D. Freeman, and that he lived in Callahan county, Texas, at that time, and that he had formerly lived in Philadelphia. He told witness that he wanted to borrow some money on a tract of six hundred and forty acres of land, situated in Callahan county, Texas, for which he had a patent. He told the witness that he had been unfortunate in the sheep industry, and wanted to stock his land with horses. He then exhibited to the witness a certified copy of a patent to six hundred and

forty acres of land in Callahan county, which he said he owned, claiming to be the Chas. D. Freeman named as the patentee in the patent. He proposed to secure the loan by a mortgage on the land thus patented, which he represented to be valuable. On the 15th day of October the defendant exhibited to witness the certificate of the county clerk of Callahan county, certifying that the land cov-ered by the patent was unincumbered. Witness upon this showing loaned the defendant some money, for which he took his note and a deed of trust on the land covered by the patent.

On the 22d day of the same month, the defendant again applied to the witness for another loan which he proposed to secure by a second deed of trust upon the six hundred and forty acres covered by the patent, and also by a deed of trust upon a tract of two hun-dred and thirteen and one-third acres of land which he said he owned under the warranty deed of one J. S. Calloway. He exhib-ited to the witness a certified copy of the warranty deed executed by one J. S. Calloway, conveying to Chas. D. Freeman two hun-dred and thirteen and one-third acres of land in Callahan county. Upon such security he asked an advance of $500. Witness let him have $300, less the discount, and took his promissory note secured by deed of trust upon the land described in the patent and the land described in the deed. Witness discounted his note at three per cent. a month, giving him $273 in exchange for his note, payable in ninety days, and the deed of trust. The witness thought that the money was paid to the defendant on checks drawn by the witness and his brother, T. D. Ross, on the bank. When the defendant signed the note and deed of trust the witness noticed the peculiar forma-tion of the first initial, and called his attention to the fact that his "C" resembled an "E." He replied that he always used a crooked back "C" in signing his name. Witness also asked the defendant about his original title papers to the land, and he said that they were at his former home in Philadelphia, and that he was going to Philadelphia soon, and would bring them with him on his return. Witness let the defendant have the money mentioned on his repre-sentations that he was the owner of the lands described in the cer-tified copies of the patent and deed, and that he was the Charles D. Freeman named in those instruments. The witness then identi-fied the instruments read in evidence as follows: The note and deed of trust first referred to, executed by the defendant as Charles D. Freeman, in favor of Zeno C. Ross, on the 15th day of October, 1884. The note and deed of trust last referred to, executed by the defendant as Charles D. Freeman, in favor of Zeno C. Ross, on the

22d day of October, 1884. The certified copy of patent number 526, volume 2, issued by the State of Texas, to Charles D. Freeman, assignee of M. J. Webb, for six hundred and forty acres of land, situated in Callahan county, Texas, bearing date August 24, 1883. The certified copy of a warranty deed for two hundred and thirteen and one-third acres of land, situated in Callahan county, Texas, executed by J. S. Calloway to Chas. D. Freeman, on the 2d day of April, 1883, together with the certificate of record, showing that the same was recorded in Callahan county on the 3d day of April, 1883.

Thomas D. Ross, a brother of the prosecuting witness, was the next witness for the State. He testified that he saw the defendant at the time of the transactions detailed by Zeno C. Ross in his testimony. Witness identified the notes and deeds of trust, and stated that he was the Thomas D. Ross named as the trustee in the deeds of trust. The notes had not yet been paid, nor had the deeds of trust been foreclosed.

J. M. Doyle was the next witness for the State. He testified that he was a real estate agent and broker, and did business in Fort Worth, Texas. Defendant was introduced to the witness by Doctor A. P. Brown, of Fort Worth, in October, 1884. Doctor Brown introduced him as Charles D. Freeman. The defendant then exhibited to the witness the certified copy of the patent in evidence, represented himself as the Chas. D. Freeman named in that instrument as the patentee, and told the witness that he wanted to borrow some money on the same. Witness replied that he thought he could assist him, and took him to the office of Ross & Ross, and introduced him to Mr. Zeno C. Ross as Charles D. Freeman. Defendant told Mr. Ross that he was the patentee named in the patent, and proposed to execute a deed of trust upon the land described in the patent as security for a loan of money. The witness again went to Mr. Ross with the defendant on the 22d day of October, 1884, when defendant exhibited the certified copy of the deed from Calloway to Charles D. Freeman, in evidence, and obtained from Ross an additional loan of $300, for which he executed his note, secured by a deed of trust upon the land described in the patent and the land described in the deed. Witness attested the deed of trust, and then went with the defendant to the office of T. P. Martin, notary public, and identified the defendant as the grantor in the deed of trust. Defendant told witness that his name was Charles D. Freeman, and that he was the man named in the patent and in the warranty deed, and witness so introduced him, thinking of no

other Freeman at the time. Defendant executed and acknowledged the deed of trust, in witness's presence, before Thomas P. Martin, notary public.

Thomas P. Martin testified, for the State, that, on the 22d day of October, 1884, the defendant and Mr. J. M. Doyle came to his notarial office in the city of Fort Worth, Texas. Mr. Doyle introduced the defendant to the witness as Charles D. Freeman. Defendant then acknowledged before the witness the execution of the deed of trust in evidence. Witness did not know defendant. He was made known to witness as Charles D. Freeman, by the oath of J. M. Doyle, the person whose name was signed to the instrument as attesting witness. The certificate of acknowledgment attached to the deed of trust was the witness's certificate.

W. H. Cliett testified, for the State, that he served as county judge of Callahan county, Texas, in 1884, his term of office expiring in November of that year. Witness was now a practicing lawyer, located in the town of Baird. Witness knew the defendant, but had never heard him called Charles. An old gentleman, approximating the age of sixty-five, was introduced to the witness in Callahan county, in 1883, as Judge Charles D. Freeman, of Philadelphia, Pennsylvania. That old gentleman talked to the witness about purchasing lands, but made no purchases from the witness. Witness heard afterwards that he bought land from B. R. Webb of Callahan county. The defendant was, in the opinion of the witness, about twenty-three years old. The witness knew when the defendant was arrested. The witness, being shown the certified copies of the patent and of the deed in evidence, testified that they were sent to him from Philadelphia, Pennsylvania, by Charles D. Freeman, about the time of the defendant's arrest. They were sent to the witness from Philadelphia, as copies of the originals. The defendant was not in possession of the land when arrested nor had he been for some time prior thereto. He had previously been in possession of the land, and had some sheep on it. He disposed of the sheep about the time that he left the land. About the time that Judge Freeman bought the land from Webb, witness heard him, Judge Freeman, say that he intended to stock the land with sheep and put his son and two other young men on it, to make something for themselves. He did not say that he bought the land for his son, nor did he mention his son's name.

B. R. Webb testified, for the State, that he lived in Callahan county, Texas, and was a practicing lawyer. He knew the defendant by sight. He first saw the defendant in the latter part of 1883,

in Callahan county, Texas. He was then known as Freeman, but witness had never heard him called Charles, or by any other given name. In March or April, 1883, the witness met an old gentleman in Callahan county, who brought letters introducing him as Judge Charles D. Freeman, of Philadelphia. Judge Freeman told witness that he wanted to buy some land for a sheep ranche, and witness sold him some land situated in Callahan county. Witness identified the patent in evidence, and testified that he sold Judge Charles D. Freeman the land described in the patent. The land then was unpatented, but was under location by virtue of the certificate of Mrs. M. J. Webb, the witness's mother, and witness, as agent for his mother, sold the certificate and the land located under it. Witness and Judge Freeman first thought of having the land patented to M. J. Webb, and then conveyed, but Judge Freeman finally concluded to pay the balance due on the land and get the patent direct. He then gave the witness his check for $600, which the witness forwarded to Austin and obtained the original patent, of which the instrument in evidence is a certified copy. At the same time, the witness sold Judge Freeman two other tracts of land, one of them being the tract described in the deed in evidence. When Judge Freeman purchased and paid for the lands, he said nothing about his son, nor did the witness hear him speak of having a son until after the land transactions, when he said that he intended to stock the land with sheep and put his son and another young man on it, and that if they did not do well with sheep, he would stock the land with horses. He said nothing about buying the land for his son, nor about having the title papers made out in any name other than his own. Some time after Judge Freeman left Callahan county, the defendant arrived, and went into possession of the land, and remained on it a year or two. Witness did not know that defendant was Judge Freeman's son, but had so understood. Witness had never seen the defendant in company with Judge Freeman. Judge Freeman was introduced to witness as Charles D. Freeman. Witness dealt with Judge Freeman as Charles D. Freeman, and knew of nobody else as a party to the land transactions described. The State closed.

J. E. Thomas testified, for the defense, that he was a lawyer and lived at Baird, Callahan county, Texas. The witness was introduced to Judge Freeman, of Philadelphia, in 1883, and had some conversation with him about lands. Judge Freeman said that he wanted to buy some lands, and witness tried to sell him some he had in charge. He afterwards told witness that he had bought

some lands from Mr. Webb, and that his purpose was to start his son and another young man on a sheep ranche. The defendant afterwards went into possession of the land. In negotiating with the witness about lands, Judge Freeman said that he wanted to purchase for his son. Witness knew Judge Freeman as General Freeman, but had not seen him since April, 1883. He did not mention his son's given name. The defendant was known to witness as C. D. Freeman. Witness had never heard what name the initial "C" stood for.

W. R. McDermot testified, for the defendant, that he was the assessor of taxes for Callahan county in 1883. In that year the defendant listed for taxation three tracts of land, viz.: two hundred and thirteen and one-third acres, known as the Smith tract, three hundred and twenty acres of the Logan survey, and six hundred and forty acres, known as the Webb survey. He rendered the property described, and it was assessed as the property of C. D. Freeman. Witness did not know who paid the taxes.

I. N. Jackson testified, for the defendant, that he was the county clerk of Callahan county, and occupied that position in October, 1884. Witness was acquainted with the defendant and knew him in 1884. Witness identified the copies of the patent and deed in evidence, and the certificate exhibited. Witness gave the defendant the copies, and also the certificate as to the lands being free of incumbrance, or rather sent them to him at Fort Worth. Those papers were genuine, and were issued by the witness as county clerk. Witness met Judge Freeman while he was in Callahan county. Witness thought that he received from Webb & Webb the transfer of the Webb certificate to Chas. D. Freeman, and also the deed to the two hundred and thirteen and one-third acres of land. R. B. Webb and Judge Charles D. Freeman called at the witness's office and got the deed after it was recorded, and paid the recording fee. Witness did not remember to whom he gave the patent after recording it. Defendant lived in Callahan county a year or more. The witness gave copies of records to any one calling for them.

W. C. Asbury testified, for the defense, that he knew the defendant. In 1883, at which time witness was deputy sheriff of Callahan county, he met the father of the defendant. Judge Charles D. Freeman introduced the defendant as his son to the witness. Judge Freeman went to Belle Plain with witness, and told witness that he was in Callahan county to buy land for his wild son, pointing to the defendant, who was with them in the hack. He said that he was

going to let his son, the defendant, try the sheep business. Defendant went into possession of land bought by Judge Freeman, and remained on it a year or more. The witness was at the ranche during defendant's occupancy two or three times. Witness did not know what became of the sheep. Judge Freeman remarked that he was going to try the defendant and a young man whose name witness did not remember, at sheep raising. Defendant was arrested in Abilene, in the county adjoining Callahan. Witness did not know why he went to Abilene.

The motion for new trial raised the questions discussed in the opinion.

· *W. D. Harris, R. D. Wear* and *Bascom & Essex*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. Three counts were contained in the indictment; the first two of which were abandoned by the prosecution, and the third selected as the one upon which the trial and conviction were had. This third count was based upon article 450 of the Penal Code, which reads: "If any person shall falsely personate another, whether bearing the same name or not, and in such assumed character shall, before any officer authorized by law to authenticate instruments of writing for registration, acknowledge the execution of any instrument of writing purporting to convey or in any manner affect an interest in property, such instrument purporting to be the act of the person whose name is so assumed, and the acknowledgment thereof being such as would entitle the instrument to be registered, he shall be punished by confinement in the penitentiary not less than two nor more than ten years."

.A motion made by defendant to quash this third count of the indictment was overruled by the court. We find the count to be in substantial compliance with the form No. 318, Willson's Criminal Forms, p. 144. (See, also, *Martin* v. *The State*, 1 Texas Ct. App., 586.) It was not necessary to allege the whereabouts or residence of Chas. D. Freeman, the party alleged to have been falsely personated,— his whereabouts or residence being a matter immaterial to the issue.

Appellant, for the purpose of obtaining $300 in money of one Ross, executed a deed of trust, and acknowledged the same for registration, upon one or more tracts of land in Callahan county. One

of the tracts of land had been patented to a Charles D. Freeman; the other tract had been conveyed or deeded to Chas. D. Freeman of the county of Philadelphia, state of Pennsylvania. The deed of trust in its recitals purported to be the act of Chas. D. Freeman of Callahan county, Texas, and was executed and acknowledged by appellant, who signed his name thereto as C. D. Freeman. At the time of the execution of this instrument appellant claimed to own the lands described in the deed of trust. He said the land mentioned in the patent was patented to him, and that he was the Chas. D. Freeman named in the patent and deed, and he never mentioned any other person as ever having had any claim or title to the land under the patent or deed. In substance, the evidence adduced on the trial was that an old gentleman named Chas. D. Freeman, of Philadelphia, Pa., purchased and paid for the lands, but before and at the time of the purchase told parties that he was purchasing the land for his son, this appellant, who was with him; that he intended to establish a sheep ranche for his son and one or more young men. This appellant, the son, was known as C. D. Freeman, but none of the witnesses had ever known him to be called " Charles," nor did they know what the initial letter C. in his name stood for. It was in proof, however, that appellant had occupied the land since but a short time after its purchase by his father, and that he had rendered the same for taxation whilst he so occupied it.

It occurs to us, after a mature consideration of the evidence in this case, that it is not conclusive nor satisfactory as to appellant's guilt. If the land was purchased by the father for the son, it is but reasonable that, to save expense as well as multiplicity of title papers, he would have had the patent to issue to, and the deeds made directly to, the son. In the uncertainty in which the evidence leaves us, we cannot tell whether, in view of these facts, the patent issued and the deed was made to the father or the son. Quite a number of objections are urged in the brief of counsel to the charge of the court. We are of opinion the charge presented the law of the case. Believing that the evidence is insufficient to support the verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*